64849. FARLOW et al. v. VIGILANT INSURANCE COMPANY
et al.

SOGNIER, Judge.

Floyd E. Farlow, on behalf of himself and his minor son, filed the instant action against his insurers, Federal Insurance Company (Federal) and Vigilant Insurance Company (Vigilant), asserting one count for damages for breach of contract and a second count seeking declaratory judgment. Federal and Vigilant had denied coverage and refused to defend Farlow and his son in a personal injury action brought by Larry and Susan Sarner on behalf of their minor child who was struck by a 1979 Yamaha GT 80 owned by Farlow and operated by Farlow's son. The insurers, in their answer in the nature of a counterclaim (see OCGA § 9-11-8 (c) (formerly Code Ann. § 81A-108 (c)); *Roberts v. Farmer,* 127 Ga. App. 237, 241 (193 SE2d 216) (1972)), requested adjudication by declaratory judgment of the coverage issues. Because an insured is not entitled to a declaration of rights in the instant case, see *Residential Developments v. Merchants Indem. Co.,* 122 Ga. App. 503 (177 SE2d 715) (1970), aff'd 227 Ga. 332 (180 SE2d 729) (1971), we address only the Farlows' contract count and the insurers' request for declaratory judgment.

The trial court denied the Farlows' motion for summary judgment and granted summary judgment in favor of Federal and Vigilant, ordering that the insurers had neither a duty to defend nor any liability to the Farlows for the Sarner claims. The Farlows appeal, contending that coverage and the obligation to defend the law-suit is afforded by both the Federal and Vigiliant policies. The insurers-appellees take the position that the Yamaha GT 80 was subject to certain exclusions in their respective policies.

1. We turn first to appellants' contentions concerning Federal. The Federal "professional protector plan" does not apply to "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: a. any automobile . . . ." The

policy defines "automobile" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads . . . *but not including* mobile equipment." Appellants contend that the Yamaha GT 80 is not an "automobile" but is "mobile equipment," relying on that portion of the policy definition that describes mobile equipment as: "a land vehicle . . . whether or not self-propelled: . . . 3. designed for use *principally* off public roads . . . ." (Emphasis supplied.)

As described by the manufacturer, the GT 80 is a "dual-purpose mini" with special features for trail use but also "street-legal instrumentation." The certificate of origin provides: "THIS VEHICLE IS DESIGNED AND MANUFACTURED FOR USE ON PUBLIC HIGHWAYS AND COMPLIES WITH ALL STATE AND FEDERAL LAWS." Its street capability was demonstrated by the fact that Farlow's son had operated the GT 80 in the public streets, albeit without permission, and was riding it in a public street at the time of the accident. Whether the Farlows intended the GT 80 to be used exclusively or principally off the public roads is not relevant to the purpose of its design. *Cotton States Mut. Ins. Co. v. Statiras,* 157 Ga. App. 169, 172 (276 SE2d 853) (1981). As the undisputed evidence establishes that the Yamaha GT 80 was not designed *principally* for off road use, but was instead designed for use either on or off the public roads, it is not "mobile equipment" as defined in the policy. Compare *Southern Guaranty Ins. Co. v. Duncan,* 131 Ga. App. 761, 763 (1) (206 SE2d 672) (1974). Although in ordinary usage, the GT 80 is not an automobile, it fits squarely within the policy definition of "automobile," as a land motor vehicle "designed for travel on public roads . . . ." See Lang v. Gen. Ins. Co. of America, 127 N.W.2d 541, 545 (Minn. 1964); 7 Blashfield, Automobile Law & Practice 557 fn. 25, § 314.1. Appellants' reliance on *Cotton States,* supra, is misplaced, as that case is clearly distinguishable on its facts.

There being no material issue of fact as to the principal purpose for which the vehicle was designed, Federal was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment in favor of Federal or in denying appellants' motion for summary judgment as to Federal. See *Bowen v. Ga. Farm &c. Ins. Co.,* 162 Ga. App. 707, 709 (2) (293 SE2d 8) (1982).

2. We turn next to appellants' contentions concerning the Vigilant personal excess liability policy. The policy affords no personal liability coverage for "ownership, maintenance or use . . . of any motorcycle except to the extent that insurance therefore is provided . . ." by the underlying policy, which is in this case, the Federal policy discussed in Division 1 above. The Federal policy clearly excludes motorcycles. Therefore, if the Yamaha GT 80 comes under the Vigilant policy definition of "motorcycle," the exclusion

for motorcycles would be triggered and no coverage afforded.

Appellants argue that under the Vigilant policy definitions, the GT 80 could be both a "motorcycle" and a "recreational vehicle," the latter being subject to no exclusion under the particular facts of this case. The policy defines "motorcycle" as "any motorcycle, motor scooter or any similar two or three wheeled vehicle *designed* or licensed *for use on public roads.*" (Emphasis supplied.) A "recreational vehicle" is defined as "a golf cart, mini-bike, dune buggy, snowmobile or any other land motor vehicle or amphibious motor vehicle *designed for recreational use off public roads* unless such vehicle has been licensed for road use by a competent licensing authority." (Emphasis supplied.) According to the evidence, the GT 80 does come within both definitions. See Division 1, supra.

Vigilant's reliance on *Addison v. Southern Guaranty Ins. Co.,* 155 Ga. App. 536 (271 SE2d 674) (1980), to assert that since the GT 80 could be licensed as a motor vehicle, it is precluded from being a "recreational vehicle," is misplaced. Unlike *Addison,* the issue in the instant case is whether the vehicle in question "*has been licensed,*" rather than whether it is "*subject to*" licensure. (Emphasis supplied.) Vigilant has presented no evidence showing that Farlow's GT 80 had ever been licensed.

"Thus we have a situation where one provision of the policy excludes liability and another accepts liability. [As applied to the motorcycle exclusion, the definitions of motorcycle and recreational vehicle] are repugnant to one another. When that occurs in an insurance contract the provision most favorable to the insured will be applied. *Davis v. United American Life Ins. Co.,* 215 Ga. 521, 527 (111 SE2d 488)." *Welch v. Gulf Life Ins. Co.,* 126 Ga. App. 115, 117 (190 SE2d 101) (1972). See *King v. Public Savings &c. Co.,* 162 Ga. App. 49 (290 SE2d 134) (1982); *Cotton States Mut. Ins. Co. v. Crosby,* 149 Ga. App. 450, 451 (1B) (254 SE2d 485) (1979), rev'd in part on other grds, 244 Ga. 456 (260 SE2d 860) (1979); *Southeastern Fidelity Ins. Co. v. McDonald,* 125 Ga. App. 394, 398 (188 SE2d 162) (1972); *Fokes v. Interstate Life &c. Ins. Co.,* 59 Ga. App. 680 (2 SE2d 170) (1939).

Since we hold that the Vigilant policy affords coverage and imposes a duty to defend, the trial court erred in granting Vigilant's motion for summary judgment. The trial court did not err in denying appellants' motion for summary judgment as questions of fact remain regarding damages.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 22, 1983 —
REHEARING DENIED MARCH 9, 1983 —

Action on policy. Fulton Superior Court. Before Judge Williams.

*Frank J. Klosik, Jr., Suzanne S. Barksdale,* for appellants.

*Martin M. Pollock, Roger Mills, Palmer H. Ansley,* for appellees.

*William L. Spearman, James G. Jackson,* amicus curiae.